**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| TITUS KARGBO, | Case No. 22-cv-996 |
| Plaintiff, | |
| v. | |
| 3M COMPANY, | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| Defendant. | |

Comes now, Titus Kargbo, through his undersigned attorneys, and respectfully alleges the following:

1.   Plaintiff Titus Kargbo ("Kargbo") is a black male who was employed by Defendant 3M Company ("3M") at their plant location in Aberdeen, South Dakota until he was constructively discharged on August 3, 2021 due to ongoing racial discrimination and in retaliation for Kargbo reporting discriminatory conduct at the plant. Kargbo's constructive discharge was in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), and related South Dakota state statutes.

**JURISDICTION**

2.   This Court has jurisdiction over this lawsuit under 28 U.S. Code § 1331 because the action arises under Title VII of the Civil Rights Act of 1964, as amended, hereinafter "Title VII," per 42 U.S.C. § 2000 *et seq*.

3.   Defendant 3M is a corporation incorporated under the laws of the State of Delaware with its principal place of business in Maplewood, Minnesota.

4.  Venue is proper in accordance with 28 U.S.C. § 1391(b)(1), as 3M resides in this District because its principal place of business is in this state, and it is the sole Defendant.

## DISCRIMINATION CHARGE FILED WITH EEOC

5.  Defendant, through its agents who supervised Kargbo, acted with intentional discrimination toward Kargbo because of his race in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000 et seq., and in retaliation for Kargbo complaining of discriminatory treatment by his coworkers and supervisors of himself and other employees at the plant. Kargbo timely filed a formal discrimination Complaint with the U.S. Equal Employment Opportunity Commission (the "EEOC"). Kargbo received a Notice of Right to Sue dated February 8, 2022 from the EEOC.

## DISCRIMINATION IN VIOLATION OF TITLE VII

6.  Kargbo worked alongside John Wingo at the 3M plant in Aberdeen.

7.  Kargbo witnessed Wingo being harassed and called racial slurs on many occasions. Following an altercation in April 2021, Kargbo spoke with one of 3M's supervisors, Dave Rook, on the production floor about the harassment Wingo was experiencing.

8.  Specifically, during breaktime around 6:00 a.m. on April 29, 2021, Wingo was sitting at the end of a table in the corner of the breakroom with his back turned towards the entry. Kue Moo came into the break room and walked up behind Wingo and, with no provocation (Wingo was not even aware of his presence), Moo proceeded to say, "This n----r is a bitch." Wingo immediately stood up and walked out.

9.  Kargbo spoke with Rook and explained what he had witnessed. Kargbo told Rook he was extremely uncomfortable with the language that Moo used and that he felt very offended. I explained to Rook that something should be done.

10. Kargbo asked Rook if he should make a report and speak with HR. Rook told Kargbo not to worry about it and that he (Rook) would handle the issues.

11. Rook was at all relevant times the Plant Engineering General Supervisor, and oversaw everyone in the Engineering Department.

12. Instead of handling the issues with racist conduct in the plant, Rook did nothing to address the situation.

13. Shortly after making his report, Kargbo was transferred to a different work area.

14. Kargbo was transferred from the clean room and relocated to machine 717. During Kargbo's employment, this machine was known for having a lot of issues and no one liked to run it because of all of the problems it had.

15. Several co-workers in Kargbo's "Cell" that worked with him would cover the machine when Kargbo would go on break. The coworkers would complain about 717 when Kargbo returned from break.

16. The machine would regularly have to be worked on by a mechanic and be out of commission.

17. Kargbo would ask Daniel Ham, the team lead, for his assistance with the machine because it was having so many problems. Kargbo did this so Ham could witness and be aware of the issues the machine had.

18. Instead of switching Kargbo to a new machine he was kept on 717.

3

19. Kargbo started being harassed by management about his production numbers being low.

20. Not only were supervisors harassing Kargbo about his own production, but they were also holding him responsible for other employees' production numbers – people Kargbo had no supervisory control over.

21. Team Leader Daniel Ham began blaming Kargbo for another employee's production numbers being low. This blame was uncalled for, as Kargbo was not a supervisor of this employee and had no control over their work production and low numbers.

22. Instead of discussing the issues with production and work ethic with the other employee, Kargbo was blamed.

23. Kargbo also experienced verbal harassment from coworkers who used racial slurs and threats on the production floor. Despite Kargbo and others at the plant reporting these discriminatory actions to supervisors and management, these occurrences continued through Kargbo's employment with 3M.

24. Kargbo started to become depressed and overwhelmed with the stress of the work environment, and he started to lose sleep. Although Ham continued to talk to Kargbo about his low numbers, Kargbo worked with the problematic machine and tried to improve my productivity.

25. Because of the harassing conduct and mistreatment, the racism, and the hostile environment, Kargbo quit his job at 3M in August 2021.

4

26. Kargbo was not reassigned or treated poorly by supervisors until he reported mistreatment of Wingo to his supervisors at 3M.

27. Kargbo experienced racial harassment at the hands of his coworkers when he was with Wingo, and was subjected to the same harassing treatment because of his race.

28. Kargbo was constructively discharged and discriminated against in retaliation for making complaints about the discriminatory conduct of his coworkers and his supervisors.

29. Kargbo was retaliated against by 3M for having complained of the discriminatory treatment of Wingo. As a result of the retaliatory actions of his supervisors and their lack of response to the discriminatory treatment that Kargbo and his coworkers endured, Kargbo was constructively discharged terminated from his position at 3M.

30. As a direct and proximate result of Defendant's discriminatory and retaliatory treatment of Kargbo, he has suffered actual and consequential damages. Defendant's discriminatory practices have caused Kargbo injury, including, but not limited to, lost earnings (past and future), lost benefits, emotional pain and suffering, mental anguish, humiliation, embarrassment, loss of enjoyment of life, court costs, litigation expenses (including reasonable attorneys' fees) and other damages as will be proven at trial.

31. Kargbo is entitled to equitable relief and damages for Defendant's discriminatory practices as permitted under law.

## COUNT I
## DISCRIMINATION IN VIOLATION OF TITLE VII

32.  Plaintiff reincorporates by reference paragraphs 1 through 31 and incorporates them herein.

33.  Defendant 3M's actions as set forth above constitute discrimination against Plaintiff in violation of Title VII, as amended, 42 U.S.C.§2000e-(a)(1).

## COUNT II
## RETALIATION UNDER TITLE VII

34.  Plaintiff reincorporates by reference paragraphs 1 through 31 and incorporates them herein.

35.  Defendant 3M's actions as set forth above constitute retaliation against Plaintiff in violation of Title VII, as amended, 42 U.S.C.§2000e-3(a).

## COUNT III
## DISCRIMINATION IN VIOLATION OF STATE LAW
## SECTION 20-13-10 – UNFAIR OR DISCRIMINATORY PRACTICES

36.  Plaintiff realleges paragraphs 1 through 31 and incorporates them herein.

37.  Defendant's actions as set forth above constitute discrimination against Plaintiff based on his race in violation of the South Dakota Human Rights Act, South Dakota Code § 20-13-22, in that as Plaintiff's employer, 3M, through their agents as detailed above, discharged and accorded adverse or unequal treatment to Plaintiff as an employee of 3M with respect to his training, promotion, upgrading, compensation, employment, and other terms or conditions of her employment. These actions were taken on account of Plaintiff's race.

6

## COUNT IV
## STATE CLAIM OF RETALIATION

38.   Plaintiff reincorporates by reference paragraphs 1 through 31 and incorporates them herein.

39.   Plaintiff was reassigned to a lesser working assignment and retaliated against for making reports of discriminatory conduct in violation of the South Dakota Human Rights Act.

40.   Defendant's actions as set forth above constitute retaliation against Plaintiff in violation of the South Dakota Human Rights Act, South Dakota Code § 20-13-26, in that 3M, by and through its agents as detailed above, did engage in reprisal against Plaintiff by reason of his reporting the discriminatory conduct of his coworkers and supervisors.

Wherefore, Plaintiff respectfully requests that Defendant's actions be declared unlawful and enter judgment in his favor and against Defendant and award:

1.   Compensatory damages, including for emotional distress, as the evidence at trial may show;

2.   Damages against Defendant including but not limited to those damages allowed by Title VII, the South Dakota Human Relations Act, and any other pertinent and applicable statute, rule or regulation;

3.   For Plaintiff's damages, including but not limited to, lost wages and benefits.

4.   For Plaintiff's costs, disbursements, and expenses.

5.   For Plaintiff's attorney's fees.

6. Pre- and post-judgment interest, costs, expert witness fees and such other relief as the court deems proper; and

7. For such other relief as the court deems just and equitable.

PLAINTIFF DEMANDS A JURY TRIAL ON ALL CLAIMS.

Dated this 20th day of April, 2022.

**FIEBIGER LAW LLC**

s/Rolf T. Fiebiger
Thomas D. Fiebiger (#307506)
Rolf T. Fiebiger (#391138)
6800 France Ave. S., Suite 190
Edina, MN 55435
(612) 399-6474
(612) 888-6084
tom@fiebigerlaw.com
rolf@fiebigerlaw.com

ATTORNEYS FOR PLAINTIFF